**In the Matter of the Application of LOCAL 365, CEMETERY WORKERS AND GREEN ATTENDANCE WORKERS UNION, Petitioner,**

v.

**The WOODLAWN CEMETERY, Respondent.**

**No. 93 Civ. 6594 (RPP).**

United States District Court, S.D. New York.

June 9, 1994.

Harold, Salant, Strassfield & Spielberg, White Plains, NY by Christopher Harold, for petitioner.

Milbank, Tweed, Hadley & McCloy, New York City by Eugene F. Farabaugh, for respondent.

## OPINION AND ORDER

ROBERT P. PATTERSON, JR., District Judge.

Petitioner moves to confirm an arbitration award dated August 19, 1993 (the "Award"), which reinstated John Grosso "to his former position with seniority rights unimpaired but without back pay" (Award, p. 6). Respondent cross moves to vacate that part of the Award ordering reinstatement. For the reasons set forth below, Petitioner's motion is granted, Respondent's cross-motion is denied, and the award is confirmed.

## BACKGROUND

The arbitral proceeding was conducted pursuant to a Collective Bargaining Agreement between Respondent The Woodlawn Cemetery and Petitioner Local 365, Cemetery Workers and Green Attendants Union, dated December 3, 1987 (the "CBA"), in effect during the period January 1, 1988 through December 31, 1990. The CBA requires arbitration of all disputes which may arise between the parties which are not resolved through grievance procedures. Grosso was discharged by Respondent on May 24, 1990 for fighting with William Tiernan on May 19, 1990. Tiernan, who was not represented by Petitioner, was also discharged. On May 25, 1990, Grosso, a union shop steward, filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") charging he had been discharged by Respondent because he had engaged in protected and concerted activities as a shop steward for the Union and in retaliation for previous charges he had filed with the NLRB. On May 30, 1990, Petitioner filed a demand for arbitration with the American Arbitration Association ("AAA") charging that Respondent had discharged Grosso without just cause in violation of Article VII of the CBA.

On September 20, 1990, Respondent moved in this Court for a stay of the AAA arbitration proceeding on the grounds that the NLRB's proceeding involved the same factual issues as the arbitral proceeding. Respondent's motion was granted by Judge Cannella on October 2, 1990. *Woodlawn Cemetery v. Local 365,* 90 Civ. 6071 (JCM), 1990 WL 150472 (Exh. A to Verified Answer and Countercl.). Petitioner appealed and the Second Circuit affirmed on April 4, 1991. 930 F.2d 154 (2d Cir.1991).

On April 23, 1991, Administrative Law Judge James F. Morton issued a decision ("J. Morton Decision") concluding that Respondent had engaged in some unfair labor practices against John Grosso but found that Grosso had not been discharged by Respondent for his union activities, but had been terminated by Respondent for fighting. (Exh. C to Verified Answer and Countercl.) Judge Morton stated:

The evidence is clearly insufficient to establish, as General Counsel contends, that Respondent had no basis to support its conclusion that Grosso participated in a fight at the cemetery with Tiernan on May 19. I therefore cannot find that the reason for Grosso's discharge was clearly pretextual on the ground that there was no probative basis for Respondent to believe he took part in the fight. (J. Morton Decision, p. 12)

In his decision, Judge Morton then considered whether or not Respondent had treated John Grosso differently from other employees who had fought in the past. He found that the evidence was insufficient to show that Respondent had treated Grosso in a disparate manner and thus the evidence did not support the General Counsel's contention that Respondent's reason for Grosso's discharge was a pretext. Judge Morton went on to state that if the NLRB were to find on review that the General Counsel had made out a *prima facie* case, he would find that Respondent had discharged John Grosso for fighting consistent with Respondent's discharge of prior employees in similar incidents (J. Morton Decision, p. 13), and that Respondent had satisfied its burden under *Wright Line, a Division of Wright Line Inc.,* 251 NLRB 1083 (1980). On November 20, 1991, the NLRB affirmed Judge Morton's rulings, findings and conclusions in pertinent part. *Woodlawn Cemetery,* 305 NLRB 84 (1991) (Exh. D to Verified Answer and Countercl.).

The AAA Arbitration hearing on John Gross's discharge commenced on March 4, 1992 and ended on May 12, 1993. The issue presented to the arbitrator for determination was as follows:

Was the discharge of John Grosso for just and sufficient cause? If not, what shall the remedy be? (Verified Answer and Countercl. ¶ 29)

On August 19, 1993 the arbitrator, Harold M. Weston, rendered an Opinion and Award ("Arbitration Opinion and Award") finding that discharge was an extreme disciplinary action, unwarranted under the circumstances and ordered that John Grosso "be reinstated to his former position with seniority rights

unimpaired but without back pay." Mr. Weston found that John Grosso and William Tiernan had engaged in a fist fight on May 19, 1990 but that, although both had required medical attention, there was "no evidence on record that either man was the aggressor or unduly violent or acted only in self defense." Arbitration Opinion and Award at 4.

The arbitrator acknowledged that Article VII of the CBA is controlling in this case, but found that "Nothing in Article VII ... establishes that Grosso must be considered as 'assaulting' any person. He merely took part in the Tiernan fight and so far as this arbitrator is concerned, will not be held to have assaulted Tiernan. He is not subject to 'immediate discharge' under Section 7(b) [sic]." Arbitration Opinion and Award at 4.

Article VII of the CBA reads as follows:

DISCHARGE AND DISCIPLINE

A. No non-probationary employee shall be discharged, suspended or disciplined except for just and sufficient cause. Just and sufficient cause shall be deemed to be an inability to properly perform the required work for any reason.

B. Causes for immediate discharge shall be defined as, but shall not be limited to, insubordination, drinking alcohol on Cemetery grounds, or use, or being under the influence of drugs, or leaving the Cemetery grounds during working hours without authorization, or assaulting another person, or excessive lateness or absenteeism.

### DISCUSSION

■ In light of the well established deference to arbitration as a favored method of settling disputes when agreed to by the parties, the standards for judicial review of arbitration awards are limited and narrowly circumscribed. *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd.,* 888 F.2d 260, 265 (2nd Cir.1989). An arbitration award may be vacated only for one of the statutory reasons set forth in 9 U.S.C. §§ 10–11, such as the arbitrator's acting beyond the scope of his authority, or for manifest disregard of the law. *See id.* at 264–265. The Court must confirm the award if the award is not vacated for one of those reasons. *See Ottley v. Schwartzberg,* 819 F.2d 373, 375 (2d Cir.1987).

■ Vacatur of an arbitration award for manifest disregard of the law is appropriate only where the party moving to vacate the award has shown that "the arbitrator appreciated the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it." *Merril Lynch, Pierce Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2nd Cir.1986) (citations omitted). Similarly, an arbitrator's mistaken interpretation of a contract, even if clearly erroneous, is grounds for vacatur only when it fails to "draw[ ] its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). *See Cobec Brazilian Trading and Warehousing Corp. v. Isbrandtsen,* 524 F.Supp. 7, 9 (S.D.N.Y.1980).

■ Respondent argues that the NLRB does not permit a collective bargaining agreement to discriminate in favor of an employee on the basis of his activities performed as a shop steward, *Perma–Line Corp. of Am. v. Sign Pictorial & Display Union, Local 230,* 639 F.2d 890 (2d Cir.1981), and that in view of such discrimination in this case the award must be vacated as repugnant to the NLRB. Petitioner does not dispute the law but points out correctly that John Grosso's union activities and role were set forth by the arbitrator in his consideration of the nature of appropriate discipline of Grosso for fighting (Arbitration Opinion and Award at 5) and not in his determination that Grosso did not assault another person within the meaning of the CBA and thus was "not subject to 'immediate discharge' under Section 7(b) [sic]." (Arbitration Opinion and Award at 4.) Accordingly, Respondent has not made a showing of manifest disregard of the law with respect to the holding in *Perma–Line.*

■ Next, Respondent argues that the arbitrator ignored the terms of the CBA which gave Woodlawn Cemetery unfettered authority to discharge an employee for fighting. It points to the unrebutted testimony of Re-

spondent's supervisor Nagle that the term "assault" in the CBA means "fighting." Respondent argues that "the Arbitrator's determination is wholly unfounded because there is no basis in the Agreement for his finding that to be discharged for an assault, one must have been either the aggressor or unduly violent." (Resp.Mem. of Law at 17) Thus, the Respondent argues the Arbitrator acted beyond his authority by modifying unambiguous contractual language.

The Petitioner points out, however, that rather than rely on Mr. Nagle's testimony as to the meaning of assaulting another person, Petitioner relied in the arbitration proceeding on a dictionary definition of the noun "assault" contained in Webster's New Universal Unabridged Dictionary, Second Edition, Copyright 1979, defining the noun " 'assault' as 'an attack or violent onset, as with blows or weapons, whether by individual, a company or an army.' " (Pet.Mem. of Law at 10) Petitioner goes on to point out that on June 1, 1992 the arbitrator showed a desire to determine " 'Who was the aggressor? Was there an assault within the meaning of the Collective Bargaining Agreement." (Pet. Mem. of Law at 10) The Petitioner also points out (1) that in the only prior discharge of a union employee for "fighting" the worker discharged had been the aggressor and (2) that the other discharges testified to by Mr. Nagle did not involve union employees protected by the CBA. The Petitioner urges that the interpretation of the arbitrator was based on the plain meaning of the CBA and prior history under the CBA concerning discharges of union employees protected by the CBA. In view of this record, the Court cannot find that the arbitrator's interpretation of the CBA did not draw its essence from the CBA or that the arbitrator acted beyond his authority. *See Cobec Brazilian Trading*, 524 F.Supp. at 9; *United Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361.

■ Lastly, Respondent argues that the award should be vacated because the arbitrator failed to adopt the ALJ's findings and conclusions and that the doctrine of collateral estoppel precluded the relitigation in the AAA discharge arbitration of issues necessarily decided in the NLRB proceeding.

*Woodlawn Cemetery v. Local 365, Cemetery & Greens Attendants Union*, 930 F.2d 154, 156 n. 2 (2d Cir.1991) (noting that while an adverse Board decision would not preclude Grosso from pursuing his contractual claims in arbitration he "would be bound by the Board's findings of fact and law.")

The arbitrator indicated that he had tried "to the extent practicable" to comply "with Judge Cannella's order requir[ing] collateral estoppel effect be given to disputed issues . . . when the parties have had an opportunity to litigate those issues." Arbitration Opinion and Award at 4. Thus, the arbitrator acknowledged he was bound by those issues determined by the ALJ.

Respondent, however, fails to state the issue determined by the administrative adjudication, namely, whether Respondent would be found to have committed an unfair labor practice, *i.e.*, taking action against Grosso due to his union activities and position. In that proceeding, the ALJ found that, although Respondent had committed other unfair labor practices, Respondent had not discharged Grosso in retaliation for his union activities but had discharged him because he had engaged in a fight, a discharge the ALJ found consistent with Respondent's prior disciplinary actions and thus not a pretext for committing an unfair labor practice.

In his Arbitration Opinion and Award the arbitrator did not take issue with the ALJ's findings but found that under the CBA immediate discharge for "assaulting another person" required the employee to have been the aggressor and that the facts decided by the ALJ and the evidence presented to the arbitrator were not sufficient to establish that Grosso was the aggressor.

The Arbitrator has articulated the reasons for his decision and findings. They do not reflect manifest disregard of the law, and the Court will not set the award aside.

The motion of Petitioner is granted, the motion of Respondent is denied, and the award is confirmed.

IT IS SO ORDERED.