In the Matter of the Arbitration between ZEPHYROS MARITIME AGENCIES, INC., as Agents for Owners or Disponent Owners, Petitioner,

**and**

MEXICANA DE COBRE, S.A., as Charterers, Respondent.

No. 86 Civ. 8159 (SWK).

United States District Court, S.D. New York.

June 17, 1987.

---

Freehill, Hogan & Mahar by Eugene J. O'Connor, New York City, for petitioner.

Burlingham, Underwood & Lord by Kenneth H. Volk, New York City, for respondent.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action is presently before the Court on a petition and a cross-petition to confirm two separate arbitration awards rendered by the same arbitration panel. Petitioner and respondent also seek costs and reasonable attorneys' fees associated with this action. For the reasons that follow, the petition and cross-petition are granted in part and denied in part.

## BACKGROUND

On or about March 24, 1980, Zephyros Maritime Agencies, Inc. ("Zephyros") and Mexicana De Cobre, S.A. ("Mexicana") entered into a contract of affreightment by which Zephyros agreed to transport copper concentrates for Mexicana. On January 6, 1983, the Mexican Government, acting through the Director of Mexican Merchant Marine, issued an order requiring that Mexicana henceforth ship all of its cargo on Mexican flag vessels. On January 12, 1983, Mexicana advised Zephyros that, because its vessels did not bear Mexican flags, the contract was terminated. A dispute arose between the parties concerning their obligations under the contract. Zephyros submitted the dispute to arbitration pursuant to the contract. The arbitration panel issued a Partial Final Award ("First Award") dated July 6, 1986. That award determined that Zephyros was entitled to a freight refund of $8.00 per metric ton of copper concentrates shipped, with the exact amount to be supplied by the parties, and that Mexicana was justified in terminating the contract. Mexicana subsequently stipulated that 239,108.11 metric tons of copper concentrates were shipped.

On September 17, 1986, the panel rendered a Second Partial Award ("Second Award"). That award determined that Ze-

phyros was entitled to the amount of $2,712,015.26 (freight refund on the principal amount of $1,912,864.88 plus interest on the various freight reductions in the amount of $799,150.38). The second award provides:

> If payment in the sum of $2,712,015.15 is not made within 30 days from the date of this award [i.e., by October 17, 1986], interest shall resume on the principal amount of $1,912,864.88 at the rate of 7.5% per annum [i.e., $398.51 per day] and continue until payment has been made or the award has been reduced to judgment, whichever comes first.

Mexicana had not paid the amount due as of October 17, 1986.

Zephyros now moves for confirmation of the second award. Mexicana, in its cross-petition, moves for confirmation of both the first and second awards. The parties dispute the meaning of the second award with respect to the date from which interest on the principal shall accrue.

## DISCUSSION

### A. FINALITY OF AWARDS

Before the Court reaches the arguments raised by the parties, an initial matter must be resolved. To date the arbitration panel has not rendered a decision concerning Mexicana's dispatch claim for $84,398.19. The first and second awards indicate that the panel will remain constituted to address the dispatch claim, if and when requested by the parties. Section 9 of Title 9 of the United States Code provides that the Court must grant an application for an order confirming an arbitration award unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11. Section 10 provides, in relevant part, that an award may be vacated where the arbitrators failed to render a "mutual, final and definite award upon the subject matter submitted." 9 U.S.C. § 10(d). Generally to be "final" and "definite" an award "must both resolve all issues submitted to arbitration, and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award." *Puerto Rico Maritime Ship-*

*ping Authority v. Star Lines, Ltd.*, 454 F.Supp. 368, 372 (S.D.N.Y.1978). However, an interim award that finally and definitely disposes of a separate, independent claim may be confirmed "notwithstanding the absence of an award that finally disposes of all claims that were submitted to arbitration." *Eurolines Shipping Co. v. Metal Transport Corp.*, 491 F.Supp. 590, 592 (S.D.N.Y.1980) (*quoting, Puerto Rico Maritime Shipping Authority v. Star Lines, Ltd.*, 454 F.Supp. at 372).

Zephyros asserts that the second award is severable from and independent of Mexicana's dispatch claim. Mexicana asserts that both the first and second awards should be confirmed, but does not specifically address the severability of its dispatch claim. The first and second awards address both liability and damages and no further litigation is necessary to finalize the obligations of the parties, and thus the awards may be confirmed independent of the dispatch claim. *See In the Matter of Arbitration between Marabueno Compania Noviera, S.A., Dispondent Owners of M/S Atlantico and Cayman Caribbean Carriers, Charters*, 1984 AMC 1849, 1853 (S.D.N.Y.1984). For these reasons, both Zephyros' petition and Mexicana's cross-petition may be addressed absent a determination of the dispatch claim.

### B. INTEREST PROVISION IN THE SECOND AWARD

A district court's review of an arbitration award is severely limited. *Sperry International Trade, Inc. v. Government of Israel*, 689 F.2d 301, 304 (2d Cir.1982). "The purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes ...," not to create new ones. *Diapulse Corporation of America v. Carba, Ltd.*, 626 F.2d 1108, 1110 (2d Cir.1980). "An award which does not fulfill this purpose is unacceptable." *Bell Aerospace Company Division of Textron, Inc. v. Local 516, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)*, 500 F.2d 921, 924 (2d Cir.1974). Under 9 U.S.C. § 9

(1976), "the court must grant ... an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10, 11 (1976)]," and the Court is prohibited from going beyond the award to decide questions that the panel did not decide. *Cleveland Paper Handlers and Sheet Straighteners Union No. 11 of the International Printing and Graphic Communications Union v. E.W. Scripps Co.*, 681 F.2d 457, 460 (6th Cir.1982) (citing *United Steel Workers of America v. Enterprise Wheel and Car Corporation*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960)). Where the parties dispute the meaning of an award the Court's role is to examine the award and determine whether remanding it to the panel "is necessary to clarify precisely what the Court is being asked to enforce." *Oil, Chemical and Atomic Workers International Union, Local 4–367 v. Rohm & Hass, Texas, Inc.*, 93 Lab.Cas. p. 13,278 (S.D.Texas, Houston Division, September 15, 1981), *aff'd per curiam*, 677 F.2d 492 (5th Cir.1982). When the award is clear and unambiguous it must be upheld.

■ In the instant case the parties dispute the meaning of the second award with respect to the date from which interest on the principal shall accrue. The Second Award, as quoted above, *supra* at 3, states that if the award is not paid within thirty days (i.e., October 17, 1986), interest on the principal shall "resume" at the rate of 7.5 percent per annum. Mexicana asserts that the plain language of the award indicates that interest be suspended between September 17, 1986 and October 17, 1986. Zephyros' argument that it is not the panels' intent that Mexicana be excused from thirty days interest by its failure to pay the

award in a timely fashion is unpersuasive.[1] The clear and unambiguous language in the Second award is reliable evidence of the panels' intent. The plain meaning of the award is that interest on the principal be suspended between September 17, 1986 and October 17, 1986.

## C. THE FIRST AWARD

Mexicana, in its cross-petition, moves for confirmation of the first award. That award determined that Zephyros was entitled to a freight refund of $8.00 per metric ton of copper concentrates shipped, and that Mexicana was justified in terminating the contract. Zephyros does not dispute confirmation of the first award in its reply papers.

## CONCLUSION

For the above mentioned reasons, both the First and Second awards are confirmed. Mexicana is directed to pay Zephyros $2,712,015.26 plus interest at the rate of 7.5 percent per annum (i.e., $398.51 per day) on the principal amount of $1,912,864.88, from October 17, 1986 until either payment is made or judgment is entered, whichever comes first. The parties' applications for costs and reasonable attorneys' fees are denied. Petitioner shall submit an appropriate judgment in accordance with this opinion.[2]

SO ORDERED.

■

---

1. Zephyros argues that suspension of interest is in recognition of commercial reality in that: Mexicana is a foreign corporation; the amount of the award is substantial; international transfers can take some time; and there might be currency restrictions in Mexico. In addition, Zephyros asserts that the provision concerning the suspension of interest is typical of many awards of the Society of Maritime Arbitrators in New York. However, Zephyros does not mention any specific case where the phrase "interest shall resume" is itself a part of an award.

2. While this motion was under active consideration by the Court, Zephyros submitted a proposed judgment to the Court. Zephyros indicated that the attorneys for the parties had reached a settlement, but that Mexicana's counsel had not yet received authorization to execute a consent judgment. Due to the lack of consent by both parties, this proposed judgment and correspondence played no role in the Court's determination.