**ANDREA DOREEN, LTD., Dorothy Loguidice, J.C.S. Enterprises, Inc., Jack C. Stuart, J.C.S. Construction Co., Inc., Conroc Recycling Corp., Michael Loguidice Ultimate Demolition, Inc., Paul Scaglione, Plaintiffs,**

**v.**

**BUILDING MATERIAL LOCAL UNION 282, affiliated with the International Brotherhood of Teamsters, Tom Gesualdi, Paul Gattus, Dennis Gartland, Sr., Cary La Barbera, Lawrence Kudla and Others as Trustees and Fiduciaries of Local 282 Welfare, Pension, Annuity, Job Training, Vacation and Sick Leave Trust Funds Defendants.**

No. CIV.A.98–4838.

United States District Court,
E.D. New York.

March 3, 2003.

Steven M. Coren, Coren & Braun, P.C., New York City, Robert G. Lipp, Franklin & Gringer, P.C., Garden City, NY, Anthony V. Barbiero, Anthony V. Barbiero, P.C., East Islip, NY, L. Susan Scelzo Slavin, ssesqs1@ix.netcom.co, Slavin, Angiulo & Horowitz, LLP, Jericho, NY, for Plaintiffs.

Russell S. Hollander, Cohen, Weiss & Simon, Bruce S. Levine, Michael Bauman, Mary M. Dickman, Friedman Wolf & Grisi, Bruce S. Levine, Cohen, Weiss & Simon, New York City, for

*MEMORANDUM AND ORDER*

YOUNG, District Judge.[1]

## I. INTRODUCTION

In 1994, Building Material Local Union 282 ("Local 282") entered a consent decree with the United States Government, acknowledging that it, and certain of its members, had acted as a criminal enterprise, in conjunction with organized crime. The consent decree enjoined Local 282 from engaging in further criminal and racketeering misconduct. Local 282 Mem. in Supp. of Mot. for Summ. J. [Docket No. 326] at 4.

In the years 1994 through 1996, the Trustees of the Local 282 Funds (the "Trustees") initiated four separate actions under section 502 of ERISA to collect fringe benefit contributions allegedly owed to the Funds under a Collective Bargaining Agreement that had been signed by JCS Enterprises. Local 282 Mem. in Supp. of Mot. for Summ. J. [Docket No. 326] at 10. The four collection actions were consolidated under a case apart from the instant action, No. CIV.A.94–4604, (the "ERISA Collection Action").[2] In the first half of 1998, the Trustees and Doreen completed discovery in the ERISA Collection Action, and the Trustees moved for summary judgment.

**1.** Of the District of Massachusetts, sitting by designation.

**2.** The complaint was brought against JCS Enterprises (wholly owned by Jack Stuart), JCS Construction (wholly owned by Michael Loguidice), Andrea Doreen, Conroc Recycling Inc., Michael Loguidice, and Dorothy Loguidice individually. For the purposes of this order, the defendants in the ERISA Collection Action and the plaintiffs in the RICO action are both referred to as "Doreen."

Doreen then brought the related RICO action before the Court, No. CIV.A.98–4838, against Local 282 and the Trustees under 18 U.S.C § 1962(c). In this action, Doreen alleges that the ERISA Collection Action was brought against it as part of a criminal extortion conspiracy and "a sham to retaliate against Doreen." Doreen's Opp'n to Summ. J. [Docket No. 337] at 3, 15, 22;[3] Local 282's Mem. in Support of Summ. J. [Docket No. 326] at 11. In essence, Doreen claims that Local 282 and the Trustees had—during the time that the Consent Decree has been in place—engaged in a criminal conspiracy to put Doreen out of business for refusing to make unlawful payments. Doreen's Opp'n to Summ. J. [Docket No. 337]; *See Doreen v. Local Union 282*, No. 98–4838, 4–5 (E.D.N.Y. July 31, 2000) (order dismissing certain claims) [Docket No. 170]; Local 282's Mem. in Supp. of Summ. J. [Docket No. 326] at 2.

On September 11, 2000, Local 282 filed a cross-claim against Doreen in the RICO action to collect allegedly past due wages that were not paid to drivers in accordance with the Collective Bargaining Agreement. Local 282's Mem. in Supp. of Mot. for Summ. J. [Docket No. 326] at 14.

On June 15, 2001, Local 282 moved for partial summary judgment and an order to compel arbitration on the issue of whether Doreen failed to pay proper wages. *Id.* Doreen, on the same day, moved to dismiss Local 282's counterclaims based on equitable arguments such as laches, waiver, failure to meet a condition precedent, and lack of obligation under the Collective Bargaining Agreement to arbitrate. Doreen's Reply Mem. [Docket No. 241] at 4.

During the June 22, 2001 hearing—despite Doreen's arguments and defenses against arbitration—Judge Platt granted Local 282 partial summary judgment and directed Local 282 and Doreen to proceed to arbitration on all issues for this case, except the remaining RICO claim. June 22, 2001 Hearing Tr. [Docket 256] at 9–10, 14. The arbitration order did not—and was not intended to—include the claims for contribution sought by the Trustees via the ERISA Collection Action, Docket No. CV 94–4604. Oct. 18, 2001 Letter from Judge Platt [Docket No. 272].

On August 28, 2001, the parties attended a pre-hearing arbitration conference before Arbitrator Richard Adelman. Second Declaration of Michael Bauman [Docket No. 323], Exhibit J. They agreed to bifurcate liability from remedy. Declaration of Bruce Levine [Docket No. 327], Tab 1, Arbitration Opinion and Award at 2, 15. The parties then had hearings before Arbitrator Adelman on October 22, October 23, October 29, and December 18 of 2001, and February 25 and March 5 of 2002. *Id.* at 1.

On June 28, 2002 Arbitrator Adelman issued an Opinion and Award finding Doreen liable. Specifically, he found that Doreen failed to pay wages due its drivers as required by the Collective Bargaining Agreement. *Id.*

On July 1, 2002, the Trustees and Local 282 separately moved for summary judgment in the instant case, No. CIV.A.98–4838. On July 25, 2002, Doreen opposed this motion. On September 30, 2002, this Court held a summary judgment motion

---

**3.** Doreen also alleged a civil RICO violation under 18 U.S.C. § 1962(a), violations of the antitrust laws of the United states, breaches of Collective Bargaining Agreements, and tortious interference with the business relations of Doreen. Doreen's Complaint [Docket No.

1]. These other claims, however, were dismissed by Judge Platt. *Doreen v. Local Union 282*, No. 98–4838, 4–5 (E.D.N.Y. July 31, 2000) (order dismissing certain claims) [Docket No. 170].

hearing via video conference[4] and took the matter under advisement.

After consideration, the Court has decided to treat Local 282's motion for summary judgment as implicitly seeking to confirm the arbitration award. Usually, arbitration awards are confirmed by a court when a party seeks confirmation pursuant to 9 U.S.C. § 9 (2000). There is some authority, however, for treating other motions made after an award has been issued as implicitly seeking that confirmation. *Maidman v. O'Brien,* 473 F.Supp. 25, 27 (S.D.N.Y.1979) (noting that "there is authority for treating . . . motions to dismiss as implicitly seeking . . . confirmation" of the arbitration award, despite the fact that the defendants had not sought such confirmation explicitly pursuant to 9 U.S.C. § 9). Although the court in *Maidman* inferred a request for confirmation from a motion to dismiss, the court's reasoning also applies to the summary judgment motion in this case. Local 282's motion for summary judgment (filed approximately two weeks after the award was issued) relies on the validity of the arbitration award to undermine Doreen's RICO claim.[5] *See* Local 282's Mem. in Supp. of Mot. for Summ. J. [Docket No. 326] at 3. Moreover, during the hearing, the subject of confirmation of the award was addressed. This Court asked Doreen's attorneys why it ought not confirm the award. Doreen's attorneys replied that its defenses had not yet been decided. Sept. 20, 2002 Video Conference Tr. [Docket No. 343] at 7–9. Given this discussion and the reliance Local 282 places on the outcome of the arbitration proceedings, the summary judgment motion can be viewed as an implicit request for confirmation of that award. In light of the lengthy history of this case and in the interest of moving this case along, the Court views it as such a request.

## II. DISCUSSION

Generally, an arbitration award is final when no further litigation is necessary on the issue and the arbitrator intended that the award be final. *See, e.g., Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.,* 157 F.3d 174, 177 (2d Cir.1998) ("[A]n arbitration order is final if it resolve[s] all issues submitted to arbitration, and determine[s] each issue fully so that no further litigation is necessary to finalize the obligations of the parties.") (internal citations and quotation marks omitted); *Michaels v. Mariforum Shipping,* 624 F.2d 411, 413 (2d Cir.1980) (holding that "[i]n order to be 'final,' an arbitration award must be intended by the arbitrators to be their complete determination of all claims submitted to them")

---

4. Designated to sit as a visiting judge in the Eastern District of New York, this Court has handled 38 jury waived matters via the video conferencing facilities of that court and the District of Massachusetts. Among these are four trials held, in whole or in part, via video conferencing, *United States v. Mazzeo, et al,* No. 98–3060 (E.D.N.Y. filed April 22, 1998); *Kesses v. Bicker,* No. 00–05325 (E.D.N.Y. filed Sept. 5, 2000); *Davox v. Manufacturing Administration and Management Systems, Inc. v. Davox,* No. 98–5020 (E.D.N.Y. filed Aug. 4, 1998); *Sung Jin Fasteners, Ltd. v. Northstar Equipment, et al,* No. 99–3134 (E.D.N.Y. filed June 3, 1999). This efficient and just procedure is also followed in the District of Arizona (20 cases), the Middle District of Florida (13 cases), and the District of Maryland (1 case).

5. The Trustees' motion for summary judgment also relies on the validity of the arbitration award to undermine Doreen's RICO claim. *See* Trustees' Mem. in Supp. of Mot. for Summ. J. [Docket No. 320] at 7, 9, 11, 29. Both the Trustees and Local 282 use the arbitration findings to help show that Doreen owed money at the time Local 282 and the Trustees demanded payment and that the demands were lawful, that is, not part of any shakedown or conspiracy.

see also *Blue Tee Corp. v. Koehring Co.,* 754 F.Supp. 26, 30 (S.D.N.Y.1990).

■ Normally, for an arbitration award to be deemed final, the arbitrator must have determined damages in addition to liability. *Michaels,* 624 F.2d at 413–414 (stating that "[g]enerally, in order for a claim to be completely determined, the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages"); *Metallgesellschaft A.G. v. M/V Capitan Constante,* 790 F.2d 280, 282–283 (2d Cir.1986) (highlighting that a key reason for determining that the award was not final in *Michaels* was that "it left open the question of damages on the four counterclaims").

■ Here, however, the parties agreed during an arbitration hearing to bifurcate liability from remedy. Declaration of Bruce Levine [Docket No. 327], Tab 1, Arbitration Opinion and Award at 2, 15. Therefore, the Arbitrator's decision as to liability *can* be deemed "final" and confirmed by this Court. *McGregor Van De Moere, Inc. v. Paychex, Inc.,* 927 F.Supp. 616, 618 (W.D.N.Y.1996) (deciding that the decision on liability was final and could be confirmed because the parties had bifurcated liability from damages); *Corporate Printing Co. Inc. v. New York Typographical Union No. 6,* No. CIV.A.93–6796, 1994 WL 376093, at *5 (S.D.N.Y. July 18, 1994) (same). Further, the Second Circuit has determined that "the submission by the parties determines the scope of the arbitrators' authority. Thus, if the parties agree that the [arbitral] panel is to make a final decision as to part of the dispute, the arbitrators have the authority and responsibility to do so." *Trade & Transport, Inc. v. Natural Petroleum Charterers, Inc.,* 931 F.2d 191, 195 (2d Cir.1991) (internal citations omitted). Moreover, once a final partial decision is made as to a particular issue, "the arbitrators have no further au-

thority, absent agreement by the parties, to redetermine that issue." *Id.* (finding that the losing party could not reopen the issue of liability after it had been decided, but before damages were determined); *see also McGregor Van De Moere, Inc.* 927 F.Supp. at 618 (relying on *Trade & Transport* to hold that a court can confirm an award for liability when the parties agreed to bifurcate liability from damages); *Corporate Printing Co. Inc.,* 1994 WL 376093 at *5 (same).

■ Any argument that liability cannot be confirmed because both parties did not explicitly agree that each part of the bifurcated award would be final must fail. *McGregor,* 927 F.Supp. at 618 (noting that the case law does not indicate that confirmation can only be done when the "parties expressly declare that an award on liability in a bifurcated proceeding will be deemed 'final' "). As in *McGregor,* here "[t]here is nothing in the record that even remotely suggests that the parties and the [Arbitrator]... believed that the [Arbitrator's] decision on liability would be anything less than final." *Id.*

Therefore, like any other interim award, the June 28, 2002 Arbitration Opinion and Award in this case can be confirmed if it finally disposes of a separate independent claim. *See Zephyros Maritime Agencies, Inc. v. Mexicana De Cobre, S.A.,* 662 F.Supp. 892, 894 (S.D.N.Y.1987) ("[A]n interim award that finally and definitely disposes of a separate, independent claim may be confirmed 'notwithstanding the absence of an award that finally disposes of all claims that were submitted to arbitration.' ") *quoting Eurolines Shipping Co., S.A. v. Metal Transport Corp.,* 491 F.Supp. 590, 592 (S.D.N.Y.1980); *Compania Chilena De Navegacion Interoceanica v. Norton, Lilly & Co., Inc.,* 652 F.Supp. 1512, 1515 (S.D.N.Y.1987) (same). Here the parties, by agreement, made liability a

separate and independent claim from damages. Declaration of Bruce Levine [Docket No. 327], Tab 1, Arbitration Opinion and Award at 2, 15. Presumably, they did so because the decision regarding liability was relevant to—although perhaps not dispositive of—the pending RICO claim. Local 282, the Trustees, and Judge Platt in fact believed that the arbitration might dispose of the RICO claim; Arbitrator Adelman was also aware of the import this decision could have. *Id.; June 22, 2001 Hearing Tr.* [Docket 256] at 9. Arbitrator Adelman "finally and definitively" found Doreen liable; therefore, the liability award by the Arbitrator can be confirmed notwithstanding the absence of an award that finally disposes of the remedy submitted to arbitration.

Doreen has not moved to vacate or set aside the award. During the summary judgment proceedings, however, it argued that the Court should not confirm the award because its defenses (waiver, failure to meet a condition precedent, and laches) had not been addressed. Sept. 20, 2002 Video Conference Tr. [Docket No. 343] at 8–10. It is unclear if Doreen was arguing that the award was not final or that it should be vacated. In any event, the Court is not persuaded.

▮ First, the defenses to which Doreen alluded during the summary judgment hearing before this Court *were* presented, heard, and decided against Doreen by both Judge Platt and Arbitrator Adelman. While it is true that Judge Platt issued a Memorandum & Order explicitly referring all claims and defenses (procedural and substantive) to the Arbitrator (except those arising under the RICO claim), the question of whether arbitration should not be allowed because of waiver, laches, and lack of specificity was *necessarily* decided by the judge when he granted the motion to compel arbitration and ordered the parties to select the Arbitrator by the means outlined in the Collective Bargaining Agreement.[6] *Cf. Cobec Brazilian Trading and Warehousing Corp. of U.S. v. Isbrandtsen*, 524 F.Supp. 7, 9 (S.D.N.Y.1980) (noting that the question of standing was "necessarily decided by [the judge] when he granted [the plaintiff's] motion to compel arbitration and authorized [the plaintiff] to appoint an arbitrator"). In other words, had Judge Platt not intended to decide these claims and defenses implicitly, he would not have sent the parties to arbitration in this case. Moreover, the record indicates that Judge Platt heard and audibly rejected Doreen's defenses during the hearing. When Doreen asserted its equitable defenses of waiver and laches, Judge Platt said:

> I don't buy any of that. I don't think that is valid in light of the history of this case. To me this case is fairly simple, at this point. The claims of both sides with respect to what is due and owing are

---

**6.** It is true that the Supreme Court has held that issues of procedural arbitrability, including questions of timeliness and compliance with arbitration procedures, are for the arbitrator to decide. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 555–59, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *accord Schweizer Aircraft v. Local 1752*, 29 F.3d 83, 87–88 (2d Cir. 1994). A court, however, "will not order arbitration when the intended preclusive effect of a procedural provision and the fact of breach are both so plain that no rational mind could hurdle the barrier." *Rochester*

*Telephone Corp. v. Communication Workers of America*, 340 F.2d 237, 239 (2d Cir.1965) (per curiam); *Cf. John Wiley & Sons*, 376 U.S. at 557–58, 84 S.Ct. 909 (noting that a court can deny arbitration if the procedural claim "should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award"). By referring the claims to arbitration, Judge Platt made clear that the procedural defenses presented by Doreen were not so plain as to warrant denying arbitration altogether.

arbitratable claims. And I think that should be the first issue decided.

June 22, 2001 Hearing Tr. [Docket 256] at 9. Judge Platt had a similar response to Doreen's argument that the claims lacked the required specificity. *Id.* at 11. The fact that Judge Platt later clarified for the record that the Arbitrator should consider all claims and defenses (other than those involved in the RICO claim) does not mean that Judge Platt himself had not made a decision about the equitable defenses Doreen had already presented. In fact, Judge Platt implied as much when he stated in his March 28, 2002 Memorandum & Order that Arbitrator Adelman's interpretation of his June 22nd Order was "proper." *Doreen v. Local Union 282*, No. 98–4838, 5 (E.D.N.Y. Mar. 28, 2002) (order of clarification) [Docket No. 296]. Judge Platt wrote this *after* he had reviewed the transcripts from the October 22nd arbitration hearing in which Arbitrator Adelman rejected Doreen's defenses because he believed Judge Platt wanted him to "hear the case on the merits." Mar. 4, 2002 Letter from Bruce Levine [Docket No. 287], Exhibit B, October 22, 2001 Arbitration Hearing Tr. at 14–15. Therefore, as dictated by Judge Platt himself, his Memorandum & Order must be read "in accordance" with Arbitrator Adelman's interpretation. *Doreen v. Local Union 282*, No. 98–4838, 5 (E.D.N.Y. Mar. 28, 2002) (order of clarification) [Docket No. 296].

■ Even if Judge Platt had not heard and rejected Doreen's defenses, Doreen fully briefed and presented (on at least two occasions) these very same defenses to Arbitrator Adelman. *See* Mar. 4, 2002 Letter from Bruce Levine [Docket No. 287], Exhibit B, October 22, 2001 Arbitration Hearing Tr. at 14–15 (showing that Doreen presented these defenses during the October hearing); 2/28/02 Letter From Coren to Judge Platt [Docket No. 290] at 1

(admitting that Doreen presented defenses during the February hearing). The fact that the Arbitrator rejected the defenses outright does not call the award into question. To the contrary, as Judge Platt mentioned in his Memorandum & Order, Arbitrator Adelman "effectively rejected [Doreen's] defenses . . . by refusing to consider them." *Doreen v. Local Union 282*, No. 98–4838, 4 (E.D.N.Y. Mar. 28, 2002) (order of clarification) [Docket No. 296]. Although Arbitrator Adelman's rejection may have seemed perfunctory at the time, it is clear from his Opinion that he later (after more hearings and presentations by the parties) spent time analyzing Doreen's defenses. Indeed, Arbitrator Adelman laid out the reasons why he rejected each of Doreen's defenses. He pointed out that lack of specificity is "not a basis to dismiss the grievance." Declaration of Bruce Levine [Docket No. 327], Tab 1, Arbitration Opinion and Award at 12. In reference to Doreen's laches and waiver arguments, he explained that Doreen "cannot prevail on its claim that it has been prejudiced since many of the matters to which [Doreen] objects on timeliness and waiver grounds may be introduced as evidence in the RICO lawsuit, and were probably uncovered in the discovery process." *Id.* He then found that "to the extent that these are equitable arguments," Doreen, "based on its failure to keep proper records, its questionable payment of drivers in the case, and other contractual violations, has unclean hands, and, therefore, its equitable defenses must be denied." *Id.*

In addition, Doreen will have yet another chance to present these defenses during the remedy phase of arbitration. *Id.* at 13 (noting that "although [Doreen's] equitable and contractual arguments have been rejected as a basis for dismissing the wage claims in their entirety, they will be considered in the remedy phase"). The Arbitrator directed the parties to return to him

for adjudication of the remedy should they not be able to reach an agreement regarding damages in 60 days.[7] Furthermore, he stated that in "determining the extent to which the Local 282 is entitled to damages for the violations committed by [Doreen]," he would consider Doreen's equitable defenses. *Id.* The Arbitrator's decision does not indicate that the Arbitrator did not intend his award to be final. Rather, in agreeing to hear these defenses during the remedy phase, the Arbitrator was simply recognizing that, although these defenses are not adequate to prevent liability, the facts associated with the defenses—for example, delay in bringing the case—are relevant to the remedy determination, that is, how much Doreen will have to pay.

 The Court's role in reviewing arbitration awards is very limited and the Second Circuit reads the Court's authority to vacate arbitration awards very narrowly. *Local 1199, Drug, Hosp. & Health Care Employees v. Brooks Drug Co.,* 956 F.2d 22, 24–25 (2d Cir.1992); *Leed Architectural Prods., Inc. v. United Steelworkers,* 916 F.2d 63, 65 (2d Cir.1990) *citing United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Blue Tee Corp. v. Koehring Co.,* 754 F.Supp. 26, 31 (S.D.N.Y.1990). There is a "strong federal policy favoring arbitration, the enforcement of arbitration agreements and the confirmation of arbitration awards." *Pike v. Freeman,* 266 F.3d 78, 89 (2d Cir.2001); *Porush v. Lemire,* 6 F.Supp.2d 178, 181–182 (E.D.N.Y. 1998) (outlining the "strong presumption" in favor of enforcing and confirming such awards). Unless the Court finds that one of the statutory exemptions applies, the Arbitrator acted in "manifest disregard of the law," or the award is incomplete, ambiguous, or contradictory, it must be affirmed. *Saxis Steamship Co. v. Multifacs*

*Int'l Traders Inc.,* 375 F.2d 577, 582 (2d Cir.1967) (holding that "the role of the courts is limited to ascertaining whether there exists one of the specific grounds for the vacation of an award, provided in § 10 of the Arbitration Act"); *see also Porush,* 6 F.Supp.2d at 182; *In re Arbitration between Promotora de Navegacion, S.A.,* 131 F.Supp.2d 412, 416 (S.D.N.Y.2000); *Matter of Arbitration between Carina Int'l Shipping Corp. and Adam Maritime Corp.,* 961 F.Supp. 559, 563 (S.D.N.Y. 1997).

 As noted, the Court has determined that the award was not incomplete. Therefore, the only exemption that could apply is if the Arbitrator "refus[es] to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a)(3). Here, however, the Arbitrator heard the evidence (at least twice) and determined that it did not have merit. Any argument that the Arbitrator did not give the evidence of Doreen's defenses the consideration it deserved also fails because, even were this true, it would not justify vacating the award. *Hunt v. Mobil Oil Corp.,* 654 F.Supp. 1487, 1512 (S.D.N.Y.1987) (holding that the arbitrator's alleged refusal to give certain evidence the " 'consideration' it deserved" does not require vacation of award). An arbitrator "need not follow all the niceties observed by the federal courts. He need only grant the parties a fundamentally fair hearing." *Blue Tee Corp.,* 754 F.Supp. at 31 (internal citations and quotation marks omitted).

 Such a hearing occurred here. It is not the function of this Court to review the arbitration record for legal or factual errors because that would defeat a primary purpose of arbitration—to dispose of disputes quickly thus avoiding the expense

7. The 60 days ended in August 2002.

and delay of extended court proceedings, notwithstanding any diminution in the quality of justice. *See Diapulse Corp. v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2d Cir. 1980); *Saxis Steamship Co.,* 375 F.2d at 582 (noting that it is not the court's function to "review the record of the arbitration proceeding for errors of law or fact" and that "extensive judicial review frustrates the basic purpose of arbitration"); *see also Compania Chilena De Navegacion Interoceanica v. Norton, Lilly & Co. Inc.,* 652 F.Supp. 1512, 1515 (S.D.N.Y. 1987).

In keeping with the purpose of arbitration, the Second Circuit has "encouraged district courts to confirm separable arbitration awards, even where the petition to confirm is brought prior to the conclusion of all arbitration proceedings between two parties." *Id.; see also Government of the United Kingdom v. Boeing Co.,* 998 F.2d 68, 72–73 (2d Cir.1993) (noting that courts will enforce arbitration agreements even when inefficiency or piecemeal litigation occurs). Therefore, this Court is not persuaded by Doreen's arguments to refrain from confirming this award.

### III. CONCLUSION

For the foregoing reasons, Arbitrator Adelman's Arbitration Award and Opinion issued on June 28, 2002 is confirmed. In view of the age of this litigation, Arbitrator Adelman shall proceed to the remedy phase of the arbitration as expeditiously as possible. In the meantime, this Court will further consider the pending motions for summary judgment concerning the RICO claim.

SO ORDERED.